# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

In the Matter of the Estate of Chris Combis,

Desa Ballard, as Personal Representative of the Estate of Chris Combis, Respondent,

v.

George Combis, Diane Combis, and Chris Combis, Defendants,

Of Whom George Combis and Chris Combis are the Appellants.

Appellate Case No. 2020-000021

---

Appeal From Lancaster County
Brian M. Gibbons, Circuit Court Judge

---

Opinion No. 5984
Heard December 8, 2022 – Filed May 3, 2023

---

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Brian Scott McCoy, of McCoy Law Firm, LLC, of Rock Hill, for Appellant Chris Combis.

Ty Kimmell McTier, of Charlotte, North Carolina, for Appellant George Combis.

Douglas Neal Truslow, and Neal Douglas Truslow, both of Truslow & Truslow, of Columbia, for Respondent.

**VINSON, J.:**  George Combis and Chris Combis (collectively, Appellants) appeal the circuit court's order finding them in civil contempt and imposing a joint and several award in the amount of $70,000 to be paid to Desa Ballard, as personal representative of the estate of Chris 'Pop' Combis (the Estate), as compensatory contempt.  Appellants argue the circuit court erred in finding them in contempt, imposing a sanction that was criminal in nature, determining the sanction amount based on attorney's fees, failing to narrowly tailor the sanction to the Estate's actual loss or fees attributable to Appellants' contemptuous conduct, imposing a joint and several sanction, and failing to determine Appellants' ability to pay the sanction. We affirm in part, reverse in part, and remand.

## PROCEDURAL HISTORY

This case arises out of a dispute over the Estate between Pop's son, George; George's wife, Diane Combis; George's son, Chris; and Ballard, as personal representative of the Estate.[1]  The procedural history of this dispute is complex and involved actions filed in South Carolina and North Carolina state courts, the United States District Court for the District of South Carolina, and the United States Court of Appeals for the Fourth Circuit.  The current matter concerns a dispute between Ballard, as personal representative of the Estate, and George and Chris related to personal property in the Estate.  In November 2013, Ballard filed a complaint in South Carolina probate court seeking an order requiring Appellants to account for and surrender property of the Estate in their possession.  Ballard alleged Chris possessed a Rolex watch owned by Pop that Chris claimed Pop gifted to him prior to Pop's death and George possessed several firearms owned by Pop, for which George refused to provide any identifying information.  In March 2014, the probate court removed the case to South Carolina circuit court.  The circuit court subsequently consolidated several actions involving the Estate which were removed to the United States District Court for the District of South Carolina.  In its order dated September 1, 2016, the district court determined the ownership dispute over personal property was a probate court matter and declined to hear testimony regarding the personal property.  The circuit court continued to hear the issues regarding the personal property.

---

[1] We refer to Chris 'Pop' Combis as Pop, George Combis as George, Chris Combis as Chris, and Diane Combis as Diane.

In March 2017, Ballard issued subpoenas to Appellants commanding the production of the items of property sought in the complaint. Chris's subpoena commanded the production of, "Original Rolex watch allegedly gifted to you by [Pop] for appraisal." George's subpoena commanded the production of, "Any and all firearms allegedly received from or gifted to you by [Pop] for appraisal as well as contents of the safe in which [Pop] stored cash and documents." In response to Appellants' objection to the subpoenas, Ballard filed a motion to compel seeking production of the requested property for appraisal and valuation as well as sanctions, including fees allowable under Rule 37 of the South Carolina Rules of Civil Procedure. Following a hearing, the circuit court granted the motion to compel by order filed August 8, 2017, but held the motion for sanctions in abeyance. The circuit court ordered Appellants to produce the items sought for production by August 15, 2017. On August 28, 2017, Ballard filed a verified petition and requested an order and rule to show cause alleging the items produced by Appellants through their counsel on August 14, 2017, were not the items described in the subpoenas. Ballard alleged the items produced included a fake Rolex watch (the silver Rolex) and a "low-quality" handgun. She also included a more detailed description of the gold Rolex watch she sought, as well as descriptions of specific firearms. Ballard sought a finding of criminal and civil contempt and an order of compensatory contempt and/or sanctions. The circuit court filed an order and rule to show cause on September 25, 2017, to Appellants that specifically advised them of their right to counsel at the rule to show cause hearing and of their right not to testify.

A rule to show cause hearing was initially held on November 14 and 17, 2017, but the circuit court stayed the matter pending an investigation by the South Carolina Law Enforcement Division (SLED). The hearing was resumed and concluded on August 5, 2019, after SLED closed its investigation. On October 21, 2019, the circuit court filed an order finding Chris and George in civil contempt and ordering them to serve a sentence of ninety days suspended upon payment of $70,000 for fees and costs. Appellants filed a Rule 59(e), SCRCP motion to alter or amend and following a hearing, the circuit court granted the motion in part, modifying the language in the contempt order relating to the jail sentence and $70,000 in fees and costs. This appeal followed.

**STANDARD OF REVIEW**

"The determination of contempt ordinarily rests within the sound discretion of the [circuit court]." *Ex parte Kent*, 379 S.C. 633, 637, 666 S.E.2d 921, 923 (Ct. App. 2008). "On appeal, a decision regarding contempt should be reversed only if it is

without evidentiary support or the [circuit court] has abused [its] discretion." *Stone v. Reddix-Smalls*, 295 S.C. 514, 516, 369 S.E.2d 840, 840 (1988).

## ISSUES ON APPEAL

1. Did the circuit court err by holding Chris in contempt when the language of the motion to compel order and subpoena were vague and Chris timely produced a Rolex watch that objectively fit the vague description?

2. Did the circuit court err by holding George in contempt when he produced two guns that did not match the verified petition and was not ordered to produce an additional firearm?

3. Did the circuit court misapply the law of compensatory contempt by failing to tailor the sanction to proven actual losses of the Estate and by considering time spent by Ballard?

4. Did the circuit court misapply the law of compensatory contempt by failing to tailor the sanction to proven actual losses of the Estate and by ordering a joint and several sanction?

## LAW AND ANALYSIS

### I. Circuit Court's Contempt Finding as to Chris

Appellants argue the language used to describe the Rolex watch in Chris's subpoena was unclear because it was "undisputed" Chris possessed two Rolex watches previously owned by Pop: one that was silver in color, the silver Rolex, and another that was gold (the gold Rolex). They contend Ballard's use of the term "original Rolex" in the subpoena and motion to compel caused confusion and that had Ballard requested "the Rolex watch," it would have prompted Chris to inquire as to which watch she sought. Appellants maintain Ballard should have described the watch she sought in more detail in the subpoena and motion to compel. They contend there was no evidence showing Chris intentionally produced the incorrect Rolex watch or that he had any reason to believe the "original Rolex" Ballard sought was the gold Rolex. In their reply brief, Appellants argue Chris purged his contempt when he produced the gold Rolex and that the proceedings against him should have ended at that time.

Appellants further argue that whether the silver Rolex Chris produced was a genuine Rolex was not relevant to determining whether Chris was in contempt. They contend the circuit court offered no support for its finding that Chris's testimony regarding his belief that the silver Rolex he produced was genuine was not credible. Appellants assert there was no evidence in the record showing Chris knew or should have known the difference between a genuine and an imitation Rolex watch or that the term "original Rolex" as used in the subpoena and motion to compel excluded the silver Rolex because it was not genuine. We disagree.

"The power to punish for contempt is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice." *Curlee v. Howle*, 277 S.C. 377, 382, 287 S.E.2d 915, 917 (1982). "Civil contempt must be proven by clear and convincing evidence." *Poston v. Poston*, 331 S.C. 106, 113, 502 S.E.2d 86, 89 (1998). "Contempt results from the willful disobedience of a court order and before a person may be held in contempt, the record must be clear and specific as to acts or conduct upon which the contempt is based." *Ex parte Kent*, 379 S.C. at 637, 666 S.E.2d at 923. "A willful act is one which is 'done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law.'" *Miller v. Miller*, 375 S.C. 443, 454, 652 S.E.2d 754, 759-60 (Ct. App. 2007) (quoting *Widman v. Widman*, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct. App. 2001)).

At the outset, we acknowledge George's deposition testimony and the testimony presented at the rule to show cause hearing created significant confusion as to what watches Pop owned. Nevertheless, we hold the circuit court did not abuse its discretion in finding Chris in contempt because clear and convincing evidence showed Chris willfully disobeyed the motion to compel order. First, as to Appellants' argument that the language used in Chris's subpoena was too vague, we conclude that, viewed in context, the language was sufficiently descriptive to inform Chris of what he must do. *See Welchel v. Boyter*, 260 S.C. 418, 421, 196 S.E.2d 496, 498 (1973) ("One may not be convicted of contempt for violating a court order which fails to tell him in definite terms what he must do."). Ballard testified Appellants' counsel represented to her that Chris possessed a single Rolex watch belonging to Pop. At the time she issued the subpoena, Ballard was only aware that Pop owned one gold Rolex watch and believed this was the watch referenced in Pop's trust, which devised a single Rolex watch to Chris. It was only after Ballard filed the rule to show cause that George alleged in his deposition

testimony that Pop owned multiple Rolex watches. At the rule to show cause hearing, Chris admitted he possessed both a silver Rolex and a gold Rolex that he alleged Pop gifted to him in the early 2000s. Chris produced the gold Rolex on the first day of the hearing. In light of Appellants' counsel's representation that Chris possessed only one Rolex watch belonging to Pop and the language of Pop's trust, we find the subpoena was sufficient to inform Chris that he should have produced both watches regardless of whether he believed the description "original" referred to the silver Rolex.

In addition, we find evidence supports the circuit court's finding Chris's testimony that he did not know the difference between a real Rolex watch and a fake Rolex watch was not credible. At the rule to show cause hearing, a jeweler testified he determined the silver Rolex was "obviously fake" because it was too light in weight to have a counterweight in the back, which allows the watch to wind itself; the face of the watch appeared to be covered with plastic, rather than mineral crystal or sapphire crystal, due to the amount of visible scratching; the gold band material had worn off, which would not occur on a genuine Rolex; and the watch stem was missing the Rolex crown insignia. These characteristics would have been readily apparent to Chris given that he also possessed the gold Rolex, which was genuine. Based on the foregoing, we find evidence supports the circuit court's credibility finding. Accordingly, because Chris knew the silver Rolex was fake, it was reasonable to expect Chris to know the language in his subpoena referring to an "original Rolex" was not in reference to a fake Rolex watch.

Furthermore, because Chris knew the silver Rolex was fake, his production of the gold Rolex at the rule to show cause hearing was clear and convincing evidence of his specific intent to willfully disobey the motion to compel order. By his own admission, Pop gifted Chris the gold Rolex, which had previously belonged to Pop. Moreover, Chris testified the gold Rolex had been in his possession ever since Pop gifted it to him, meaning Chris had the gold Rolex at the time the circuit court filed its motion to compel order. *Cf. Miller*, 375 S.C. at 454, 652 S.E.2d at 760 ("Whe[n] a contemnor is unable, without fault on his part, to obey an order of the court, he is not to be held in contempt." (quoting *Widman*, 348 S.C. at 119, 557 S.E.2d at 705)). Based on the foregoing, we hold the circuit court did not abuse its discretion in finding Chris in contempt and, as discussed below, remand the issue of the determination of fees appropriate for compensatory contempt only as to Chris.

**II.    Circuit Court's Contempt Finding as to George**

Appellants argue the record contains no evidence to support a finding that George possessed any of the firearms described in the rule to show cause. Because the circuit court did not order George to produce any additional firearms, Appellants assert the circuit court abused its discretion in finding George in contempt. We agree.

We hold the circuit court abused its discretion in finding George in contempt because the record does not contain clear and convincing evidence showing George possessed any of the firearms Ballard alleged he had in his possession or that the firearms George produced in response to the subpoena did not belong to Pop. *See Poston*, 331 S.C. at 113, 502 S.E.2d at 89 ("Civil contempt must be proven by clear and convincing evidence."); *Ex parte Kent*, 379 S.C. at 637, 666 S.E.2d at 923 ("Contempt results from the willful disobedience of a court order and before a person may be held in contempt, the record must be clear and specific as to acts or conduct upon which the contempt is based."). George's subpoena required him to produce "any and all firearms allegedly received from or gifted to [him] by [Pop]." In drafting the subpoena, Ballard relied on representations made by Appellants' counsel, who suggested George possessed two nondescript pistols owned by Pop. Although Ballard presented testimony at the rule to show cause hearing to provide evidence of firearms Pop owned, Ballard admitted she did not have any identifying information about the two pistols George allegedly possessed and she had no direct knowledge that Pop did not own the pistol George produced in response to the motion to compel order. No testimony was presented about the firearm that Appellants' attorney produced to the circuit court on the second day of the rule to show cause hearing. Ballard suggested during her testimony that George possessed an engraved silver pistol with pearl grips; however, one of Pop's daughters testified it was possible Pop took that firearm to his business and hid it. Because Ballard failed to present clear and convincing evidence showing the pistols George produced were not responsive to the subpoena or that he possessed additional firearms owned by Pop, we reverse the circuit court's contempt finding against George.

Appellants further argue George's subpoena and the motion to compel requested gifted items that, if gifted during Pop's lifetime, would remove them from the Estate and fall outside the scope of the proceedings. We find our reversal of the circuit court's order finding George in civil contempt is dispositive of this issue and decline to address the merits of this argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (2008) (holding an

appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).

Additionally, Appellants' judicial estoppel argument as it relates to George's contempt is not properly before the court because it was first raised in Appellants' reply brief, and we decline to address the merits of this argument. *See Spivey ex rel. Spivey v. Carolina Crawler*, 367 S.C. 154, 161, 624 S.E.2d 435, 438 (Ct. App. 2005) (declining to consider issues raised for the first time in the appellants' reply brief when not raised in the appellant's initial brief).

### III.    Misapplication of the Law of Civil Contempt

Appellants argue the circuit court's civil contempt order was criminal in nature. We disagree.

"The major factor in determining whether a contempt is civil or criminal is the purpose for which the power is exercised, including the nature of the relief and the purpose for which the sentence is imposed." *Poston*, 331 S.C. at 111, 502 S.E.2d at 88.  "The purpose of civil contempt is 'to coerce the defendant to do the thing required by the order for the benefit of the complainant.'" *Id.* (quoting *Gompers v. Buck's Store & Range Co.*, 221 U.S. 418, 441 (1911)).  "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant." *Id.* (quoting *Hicks v. Feiock*, 485 U.S. 624, 631 (1988)). "Courts, by exercising their contempt power, can award attorney's fees under a compensatory contempt theory." *Miller*, 375 S.C. at 463, 652 S.E.2d at 764.

> In a civil contempt proceeding, a contemnor may be required to reimburse a complainant for the costs he incurred in enforcing the court's prior order, including reasonable attorney's fees.  The award of attorney's fees is not a punishment but an indemnification to the party who instituted the contempt proceeding.  Thus, the court is not required to provide the contemnor with an opportunity to purge himself of these attorney's fees in order to hold him in civil contempt.

*Poston*, 331 S.C. at 114, 502 S.E.2d at 90.

"In civil contempt cases, the sanctions are conditioned on compliance with the court's order." *Id.* at 112, 502 S.E.2d at 89.  "The conditional nature of the

punishment renders the relief civil in nature because the contemnor 'can end the sentence and discharge himself at any moment by doing what he had previously refused to do.'" *Id.* (quoting *Hicks*, 485 U.S. at 633).

We hold the substance of the circuit court's finding of contempt was civil in nature. Although the court's order granting Appellants' motion to alter or amend in part denoted the $70,000 in costs and fees as a sanction, considering the order in its entirety, its language evidenced the court's intent to find Appellants in civil contempt and award fees and costs as compensatory contempt. *See Miller*, 375 S.C. at 461-62, 652 S.E.2d at 763-64 (finding the court's "error in nomenclature" was not determinative of whether the court's finding of contempt was civil or criminal in nature). The order awarded Ballard, *as personal representative of the Estate*, $70,000 in fees and costs as compensatory contempt. The award of compensatory contempt was intended to indemnify the Estate, not as a punishment. As a sanction for *failure to pay the compensatory contempt*, Appellants would be held in custody until they purged themselves of the compensatory contempt or for no longer than ninety days. *See Curlee*, 277 S.C. at 382-86, 287 S.E.2d at 917-20 (holding when the contemnor was ordered to pay the moving party's expenses incurred in enforcing the court's order as compensatory contempt and given a conditional sentence as a sanction for failure to pay the expenses, the court's contempt finding was civil in nature). Accordingly, the circuit court's finding of contempt was civil in nature, and Appellants' argument that the contempt order should be reversed is without merit.

## IV.    Misapplication of the Doctrine of Compensatory Contempt

Appellants argue the compensatory contempt award the circuit court imposed was not related to any of the Estate's actual losses or attributable to the contemptuous conduct, Ballard was not entitled to attorney's fees and time as an element of loss because she was a party to the suit, the circuit court erred by awarding joint and several compensatory contempt, the circuit court failed to determine their ability to pay the compensatory contempt award, and it was unreasonable to require that the compensatory contempt award be paid the same day the reconsideration order was filed. We address each of Appellants' arguments below.

As to whether the compensatory contempt award was related to the Estate's actual loss or attributable to the contemptuous conduct, whether Ballard was entitled to her attorney's fees and time as an element of loss, whether the court did not give Appellants adequate notice to pay the compensatory contempt award, and whether the circuit court erred by awarding joint and several compensatory contempt, we

find reversing the circuit court's order finding George in civil contempt and remanding to the circuit court for a determination of fees appropriate for compensatory contempt as to Chris is dispositive of this issue and decline to address the merits of these arguments. *See Futch*, 335 S.C. at 613, 518 S.E.2d at 598 (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).

Finally, Appellants contend the circuit court erred in failing to determine their ability to pay the compensatory contempt award. We find this argument has been abandoned on appeal. *See State v. Lindsey*, 394 S.C. 354, 363, 714 S.E.2d 554, 558 (Ct. App. 2011) ("An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority."); *Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001) ("South Carolina law clearly states that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review."). In their brief, Appellants make short, conclusory statements concerning the circuit court's alleged error—asserting simply, "Clearly, this was error"—and fail to cite to any relevant legal authority in support of their argument. Appellants cite to *Cheap-O's Truck Stop, Inc. v. Cloyd*[2] to support their argument; however, that case dealt with a term of imprisonment imposed for failure to comply with a settlement agreement and is therefore irrelevant. Accordingly, we find Appellants' arguments are abandoned on appeal and decline to address the merits of this issue.

**CONCLUSION**

Based on the foregoing, we affirm the circuit court's civil contempt finding as to Chris, reverse its civil contempt finding as to George, and remand the issue of the determination of fees appropriate for compensatory contempt only as to Chris.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**KONDUROS AND HEWITT, JJ., concur.**

---

[2] 350 S.C. 596, 609-10, 567 S.E.2d 514, 521 (Ct. App. 2002).